# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:23-cv-01373-JHE |
| | ) | |
| DOUG COLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Through her first amended complaint ("FAC"), Plaintiff Sharon Scott ("Scott" or "Plaintiff") brings this employment discrimination action against Defendant Doug Collins, the Secretary of the Department of Veterans Affairs (the "VA" or "Defendant").[2] (Doc. 25).  The VA

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 17).

[2] In the original complaint, filed *pro se*, Plaintiff Sharon Scott named Denis McDonough, then Secretary of Veterans Affairs, as a defendant.  (*See* doc. 1).  After she obtained counsel, she filed a first amended complaint naming the United States Department of Veterans Affairs as the sole defendant.  (*See* doc. 25).  Scott has been inconsistent about the exact defendant at issue here, referring to the defendant as Secretary McDonough even after filing the amended complaint.  (*See, e.g.,* doc. 36).  The defendant has filed documents exclusively on behalf of Secretary McDonough (*see* docs. 27, 28, 30, 33, 38 & 40) until filing a motion for extension of time on behalf of current Secretary Doug Collins, who replaced Secretary McDonough on February 5, 2025 (doc. 42). Secretary Collins filed the motion for summary judgment at issue here (doc. 45), and Scott's response lists Secretary Collins in the caption as the sole defendant (*see* doc. 47).

In a Title VII case such as this, "the head of the agency involved is the only appropriate defendant . . . ."  *Canino v. U.S. E.E.O.C.*, 707 F.2d 468, 472 (11th Cir. 1983).  Consistent with this and what appears to be the parties' understanding of the nature of the defendant, and because the parties' substantial rights do not relate to the exact name of the defendant, the undersigned *sua sponte* substitutes Doug Collins, Secretary of the Department of Veterans Affairs, as the defendant in this action.  *See* FED. R. CIV. P. 25(d) ("Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the

has moved for summary judgment.  (Doc. 45).  Scott opposes the motion (doc. 47), and the VA

has filed a reply in support (doc. 48).  For the reasons discussed below, the motion for summary

judgment is **GRANTED**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Rule 56 "mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving

party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.

The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to

establish there is a "genuine issue for trial."  *Id.* at 324.  (citation and internal quotation marks

omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the

light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157,

(1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-

moving party's favor).  Any factual disputes will be resolved in Plaintiff's favor when sufficient

---

substitution.").  The Clerk is **DIRECTED** to update CM/ECF to reflect that the defendant in this
action is Doug Collins, Secretary of the Department of Veterans Affairs.

competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[3]

Scott, who is female, worked as a motor vehicle operator for over sixteen years at the Birmingham VA Medical Center, beginning in October 2005 and continuing until her retirement on October 31, 2022. (FAC at ¶¶ 5, 7; Deposition of Sharon Scott (doc. 44-1, "Scott Depo.") at 5 (14:5–18, 15:2–14); doc. 44-18). In December 2020, Scott began reporting to a new supervisor, Angus Frederick ("Frederick"). (Scott Depo. at 6–7 (20:22–21:6, 22:11–14)). Scott's second level supervisor from about 2011 or 2012 onward was Garnet Holifield ("Holifield"), the Birmingham VA's transportation supervisor. (Scott Depo. at 7 (21:10–22:10); Affidavit of Garnet Holifield (doc. 44-8, "Holifield Aff.") at ¶ 7.b.).

Beginning in 2014, Holifield made various comments about Scott's medical conditions and PTSD. (Scott Depo. at 61:7–14). Holifield would reference "Ms. Scott and her craziness, Ms.

---

[3] These "summary judgment facts" are undisputed or, if disputed, taken in a light most favorable to Scott. Where a purported dispute is not genuine or material, the undersigned has addressed the matter in a footnote.

Scott and her disability, or Ms. Scott and [her] condition," saying things such as "People playing crazy or want to be crazy like Ms. Scott, for instance, her PTSD, but she's here working" and "You handicap; you crazy."  (Scott Depo. at 8–9 (25:23–29:3)).  Holifield made these comments both in front of Scott and to others outside her presence.  (Scott Depo. at 9 (20:12–15)).  Scott felt as though she were the "brunt of the jokes in the office."  (Scott Depo. at 8 (26:20–25)).

### A. October 14, 2021 Incident (the "October Incident")

On October 14, 2021, an incident occurred between Scott and Holifield.  Frederick, witness Thomas Pams ("Pams"), Holifield, and Scott each wrote a Report of Contact ("ROC") concerning the incident.[4]

- Frederick stated that Scott was in the office break room sometime between 7:15 a.m. and 8:30 a.m.  (Doc. 44-13 at 2).  According to Frederick, Scott stated "I really don't want to do the time card because there stuff Brandon need to go on VATA because Jason Bernardy need to be drop from the system." (*Id.*).  Holifield responded that Scott did not need to do it; Brandon would "do it until Forrest get train up."[5]  (*Id.*).  Scott then informed Holifield that he was not her supervisor and that she was "going to still do it (Time Sheet)."  (*Id.*).  Holifield approached Frederick, asking him to tell Scott "not to post time." (*Id.*).  Frederick went into the break room, thanked Scott for her help, and instructed her not to post time.  (*Id.*).  Frederick returned to his desk and started to call a mechanic shop.  (*Id.*).  Scott and Holifield had a conversation "going back and forth," during which Scott stated "You all must be scared of those white

---

[4] All quotes from the ROCs are reproduced verbatim below.
[5] In February 2021, Holifield had requested a delegation of authority to move primary timekeeping duties from Scott to Brandon Walsh.  (Doc. 44-11).

folks." [6]  (*Id.*).  At about this time, the call began and Frederick could not listen further to the conversation between Scott and Holifield.  (*Id.*).

- According to Pams, Scott mentioned that time was being posted for a person who did not work there.  (Doc. 44-13 at 3).  Scott stated that "there were some corrections that Brandon needed to clear up before she started posting time so she wouldn't be blamed for any incorrect time cards."  (*Id.*).  Holifield instructed Scott not to worry about doing the time; he would get Brandon to do it.  (*Id.*).  Scott informed Holifield that "he is not her damn supervisor" and could not tell her not to put in the time.  (*Id.*).  Holifield told Frederick to tell Scott not to do the time.  (*Id.*).  Scott and Holifield argued over Holifield's supervisory role, and Scott told Holifield that he "was afraid of his Caucasian supervisors."  (*Id.*).  Scott then left the office.  (*Id.*).

- Holifield stated that he was in his office when Scott stated "I'm sick of this shit I'm not going to do this time until this get fixed this time card need to be corrected."  (Doc. 44-13 at 4).  Scott stated that she was going to "send Brandon and email" Shayne Minton ("Minton"), the Engineering Service Chief."  (*Id.*).  When Holifield informed Scott that Brandon did not work directly under Minton, Scott stated she would email Minton anyway.  (*Id.*).  Scott was "in a rage using profanity."[7]  (*Id.*).  Holifield directed

---

[6] In her response, Scott purports to dispute that she said "You all must be scared of those white folks."  (Doc. 47 at 2).  Rather, she states that "[i]f there was any discussion about race between Plaintiff and any other employee, the Defendant has taken it out of context."  (*Id.*).  However, this is simply her counsel's argument.  "[S]tatements and arguments of counsel are not evidence."  *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990).  In any case, the VA's brief accurately reflects that <u>Frederick</u> stated in his ROC that Scott made the statement in question.  (Doc. 45 at 6).  Whether Scott actually made the statement is beside the point given that attribution.

[7] Scott also purports to dispute that she was using profanity.  (Doc. 45 at 6).  As with the "dispute" over her alleged statement concerning "white folks" (*see supra*, n.6), she (1) does not

Scott not to worry about posting the time because Brandon would continue posting it. (*Id.*).  Scott told Holifield that he was not her supervisor and could not tell her what to do.  (*Id.*).  Holifield asked Frederick to instruct Scott not to post the time.  (*Id.*).  Scott stated "you'll scared of theses white folks thats what the problem using file language."  (*Id.*).

- Scott emailed Frederick an ROC on January 19, 2022.  (Doc. 44-14).  Scott stated that in October 2021, "the two frontline supervisors" had asked her if she would consider taking back timekeeping responsibilities due to errors.  (*Id.*).   She agreed to do so at the beginning of the next pay period, conditioned on the current timekeeper "clean[ing] up his errors."  (*Id.*).  On October 14, 2021, Frederick approached her to ask why she had not completed the time.  (*Id.*).  When Scott told Frederick that she would start on the next time period, Fredrick told her that Holifield had informed him that Scott would be starting right away.  (*Id.*).  Scott stated that she did not agree with that "because of all the errors"; rather, she wanted "a clean start."  (*Id.*).  Holifield "interjected comments from his office to [Frederick] not to do that."  (*Id.*).  When Scott went to the breakroom to start on the time, Holifield "stormed into the breakroom and stood over [Scott], pointing his finger and waving his hand in [her] face, stating not to do time."  (*Id.*).  Scott was "in shock at his behavior and tone" and "became fearful and felt trapped."  (*Id.*).  Holifield turned and walked out of the breakroom, but Scott remained in shock for some time afterwards.[8]  (*Id.*).

---

cite any evidence to support this and (2) has not contested that <u>Holifield</u> claimed she was using profanity.

[8] Scott's deposition testimony mirrors this account.  (Scott Depo. at 10 (35:13–36:18)).

6

### B. OIG Report

On October 31, 2021, Scott submitted a complaint to the Officer of Inspector General ("OIG"), alleging "Inappropriate/improper application of unearned overtime," "Absences without application of leave," and "Perpetuation of a hostile work environment, despite agency being aware of departmental issues." (Doc. 44-15 at 3). In her complaint, Scott alleged that Holifield had "inappropriately requested and gained payment of overtime for hours not worked during at least the first 2–3 quarters of 2021" and accrued "multiple absences for which leave may have been approved, but the leave was not applied and deducted from leave accrual balances." (*Id.*). She also contended:

> Holifield has created and continues to perpetuate a hostile work environment within the Transporation [sic] Section. Agency leadership has been aware of the environmental issues due to a pending EEO claim by a female transportation employee who has been currently reassigned for several months. Although Holifield has no supervisory authority within the section, there appears to be some personal animus towards female employees. Neither executive nor service level leadership has intervened to address the issues.

(*Id.*). On November 3, 2021, Scott emailed a copy of the OIG complaint to Frederick, Minton, and others. (*Id.* at 1).

### C. November 21, 2021 Incident (the "November Incident")

On November 22, 2021, Scott emailed Frederick and Minton concerning an incident between her and Holifield on the previous day which had "elevated the hostile atmosphere in [her] working environment." (Doc. 44-17). Specifically, Scott stated:

> Garnet Holifield showed up at the [parking] deck started walking towards the vehicle I was driving when I noticed him coming towards me, I became fearful and pointed at him. He turned around and went into the office. Less than five minutes later he exited the office and got into his vehicle. This is a formal notification of what I have been subjected to. I would like to point out that the instances of hostile work environment atmosphere have caused me stress, anxiety and elevated my PTSD, and affecting my ability at work to feel safe.

7

(*Id.*).  Scott testified that Holifield "had a look of anger on his face" and appeared to be angry based on "[t]he walking [and] the positioning of the body . . . ."  (Scott Depo. at 15 (53:3–5)).  He was "walking real fast and swinging his arms."  (*Id.* at 14 (50:1–3)).

### D. EEOC Charge

On February 2, 2022, Scott brought an EEOC charge (Agency No. 2001-521-2022-14340), alleging that she had been subjected to harassment and a hostile work environment due to her sex and retaliation for prior EEO activity.[9]  (Doc. 44-20).  Scott also alleged disparate treatment on the same general grounds.  (*Id.*).  Specifically, Scott alleged the following discriminatory acts:

---

[9] In addition to this charge, Scott filed a second EEOC charge on June 20, 2022 (Agency No. 2001-521-2022-146194).  (Doc. 44-21).  Scott included allegations related to the conduct alleged in the second EEOC charge in her original *pro se* complaint.  (Doc. 1).  But she omitted those allegations from her counseled FAC.  (*See generally* doc. 25).  "As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982).  The FAC does not reference the original complaint and contains nothing that would support that it intended to include allegations concerning the conduct alleged in the second EEOC charge.

Noting this discrepancy, the VA specifically argued in the motion for summary judgment that "the Amended Complaint is the operative pleading" and therefore the allegations from the second EEOC charge are not before the court.  (Doc. 45 at 12–15).  Scott did not respond to this argument (*see generally* doc. 47), so the undersigned concludes that Scott does not dispute it and has therefore abandoned any claims based on the second EEOC charge.  *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-cv-00769-JEO, 2016 WL 324993, at *6 (N.D. Ala. Jan. 27, 2016); *Boyd v. Daniels*, No. 2:13-cv-354-MEF, 2014 WL 1245885, at *3 (M.D. Ala. Mar. 24, 2014) (dismissing claims on motion to dismiss for failure to respond); *Joseph ex rel. Joseph v. Allen*, No. CV-13-S-695-NE, 2013 WL 3712334, at *5 (N.D. Ala. July 12, 2013) (dismissing claims on motion to dismiss for failure to respond); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (same) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (dismissing undefended claims on summary judgment)); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").  Accordingly, the second EEOC charge is not relevant and will not be discussed further.

- In January 2019, Scott reported "a time issue, regarding supervisor Garnett Holifield" to her supervisor, Kenneth Mahan. (Doc. 44-20 at 2). Holifield started "gossiping" about Scott. (*Id.*).

- In June 2021, Scott became frustrated with "Mr. Holifield and his bullying," so she decided to retire from the VA. (*Id.*). Holifield never completed the supervisor's portion of the paperwork, and Scott's file was closed by OPM for "lack of completion." (*Id.*).

- Also in June 2021, Scott attempted to speak with Service Chief Shayne Minton to discuss Holifield's "bullying behavior." (*Id.*). Holifield informed Scott that she could not speak with Minton and told her that "Shayne is on my side." (*Id.*).

- On September 27, 2021, Scott was serving as timekeeper for the section. (*Id.*). She approached her supervisor, Frederick, with a question about how to code one of Holifield's absences. (*Id.*). When Holifield learned of the conversation between Scott and Frederick, he became upset and advised her "to only go through [Holifield]" and not Frederick. (*Id.*). Scott's problems with Holifield escalated after this point. (*Id.*).

- On November 21, 2021, Scott was at the worksite in a company vehicle when Holifield "began to approach the vehicle in an intimidating manner." (*Id.* at 1). Scott "put up [her] hand in a 'stop' motion towards Mr. Holifield so he would not continue walking towards" her. (*Id.*). Holifield stopped, turned, entered an office area, and shortly afterwards left the area. (*Id.*). This incident occurred after Scott filed a complaint with the VA Office of Inspector General in October 2021 regarding allegations that Holifield caused a hostile work environment. (*Id.*).

On September 23, 2023, an Administrative Judge ("AJ") issued a decision and order on the EEOC charge. (Doc. 44-22). In that decision and order, the AJ granted the VA's motion for

summary judgment, finding that Scott had "failed to show the Agency's actions were motivated by discriminatory or retaliatory animus." (*Id.* at 1). The VA issued a final order accepting the AJ's decision. (Doc. 44-23).

### III. Discussion

As originally pleaded, the FAC contained four counts: (1) Count I, a claim of disability discrimination in violation of the Americans with Disabilities Act ("ADA") (doc. 25 at 4–5, ¶¶ 16–22); (2) Count II, a claim of ADA retaliation, (*id.* at 6–7, ¶¶ 23–29); (3) Count III, a claim of Title VII race discrimination (*id.* at 7–8, ¶¶ 30–36); and (4) Count IV, a claim of Title VII gender discrimination (*id.* at 8–10, ¶¶ 37–43). After the undersigned granted the VA's previous motion to dismiss several counts (doc. 27), which Scott did not oppose (*see* doc. 36), the only remaining count is Count IV. (*See* doc. 37). Further narrowing the issues, the only portion of Count IV that remains involves the November Incident.[10] (*See id.*).

---

[10] Scott asserts in her response to the motion for summary judgment that Count IV "makes a claim under federal law for constructive discharge against all defendants." (Doc. 47 at 10). Scott concedes that "the words 'constructive discharge' do not appear in Count IV" but nevertheless argues that "it is clear from the language in Count IV that constructive discharge is alleged." (*Id.*).

There are several problems with this argument. First, the Supreme Court has held that "constructive discharge is a claim distinct from the underlying discriminatory act." *Green v. Brennan*, 578 U.S. 547, 559 (2016) (citation omitted). Scott cannot subsume a constructive discharge claim in a general discrimination count, and she cannot amend her complaint to include one through a response to a motion for summary judgment. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). Second, even if she could do either of these things, a fair reading of Count IV belies Scott's description. The only allegation related to discharge or resignation concerns Scott's decision to retire from the VA in June 2021, which she alleges was thwarted by Holifield's failure to sign the paperwork. (Doc. 25 at 9, ¶ 40). But this claim has been dismissed. (*See* doc. 37 at 2) (dismissing "[a]ny portions of Count IV alleging claims based on" the retirement paperwork claim). Third, as the VA points out (doc. 48 at 14–16), Scott would have had to administratively exhaust any constructive discharge claim *after* her retirement in October 2022. *See Green*, 578 U.S. at 561 (noting that separation from the previous employer "is an essential part of [a] constructive-discharge claim"). It is undisputed that Scott filed her only EEOC charges prior to her retirement. Although equitable tolling may be available

Title VII contains a federal-sector provision that governs claims brought by federal employees. *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1198 (11th Cir. 2021) (*"Babb II"*). That provision states in relevant part: "All personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). "[T]he Supreme Court [has] held that the 'free from any discrimination' language means that personnel actions must be made in 'a way that is not tainted by differential treatment based on' a protected characteristic." *Babb II*, 992 F.3d at 1199 (quoting *Babb v. Wilkie*, 589 U.S. 399, 406 (2020) ("*Babb I*").

The Eleventh Circuit Court of Appeals has recently clarified how district courts analyze summary judgment motions in employment discrimination cases. When a plaintiff bases her disparate treatment claims on circumstantial evidence, the court often applies the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). Under that framework, a plaintiff first bears the burden to establish a *prima facie* case of discrimination. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (citation omitted). The Eleventh Circuit has emphasized that *McDonnell Douglas* is "a 'procedural device, designed only to establish an order of proof and production' . . . [n]o more, no less." *Ismael v. Roundtree*,

---

for an untimely EEOC charge, a federal employee must still file an "initial charge with the agency whose practice is challenged." *Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 177 (11th Cir. 2024) (quoting *Grier v. Sec'y of the Army*, 799 F.2d 721, 724 (11th Cir. 1986)). She did not, and it is doubtful that any EEOC charge filed in the future—more than three years after Scott left the VA—would be subject to equitable tolling. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 972 (11th Cir. 2016) ("We have no difficulty concluding, as a matter of law, that a plaintiff who does nothing for two years is not diligent."). For all of these reasons, the undersigned declines to find that the FAC contains a viable constructive discharge claim.

161 F.4th 752, 764 (11th Cir. 2025).  Consistent with this, the Eleventh Circuit has offered a "roadmap" for district courts to follow when evaluating summary judgment motions in employment cases, dependent on whether the plaintiff has made out a *prima facie* case.  *Id.*

If the plaintiff can show a *prima facie* case of discrimination, this creates "a rebuttable presumption of illicit intent." *Ismael*, 161 F.4th at 764.  This shifts the burden to the defendant employer to show a legitimate, nondiscriminatory reason for its actions.  *Id.* at 1221 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).  If "the defendant comes forth with evidence and successfully rebuts the presumption, 'the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant' . . . [and] 'simply drops out of the picture.'" *Ismael*, 161 F.4th at 764 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993)).  In this case, the court must determine "whether 'the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker.'" *Id.* (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).  The "convincing mosaic" is simply a "rearticulation of the summary judgment standard" and is not itself an independent test.  *Id.* at 760 (quoting *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023)).  It is "simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action . . . ." *Tynes*, 88 F.4th at 946).  A plaintiff may meet this burden by "demonstrate[ing] that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that "merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 256); *Ismael*, 161

F.4th at 764.  But a plaintiff's failure to disprove the employer's reason "cannot be the sole grounds for summary judgment."  *Ismael*, 161 F.4th at 764.

If the plaintiff fails to make out a *prima facie* case under *McDonnell Douglas*, "she does not automatically lose on summary judgment."  *Ismael*, 161 F.4th at 765.  Rather, she must "produce enough evidence, on her own and without any helpful evidentiary burdens or presumptions, to demonstrate a material issue of triable fact."  *Id.* at 765.  In other words, the court "advances directly to the convincing mosaic inquiry" when the plaintiff fails to make out a *prima facie* case.  *Id*.

Here, Scott's only actionable claim is for gender discrimination based on Holifield approaching Scott in an intimidating manner.  There are two ways of reading this claim.  The first is a straightforward gender-based disparate treatment claim.  The second is a gender-based hostile work environment claim.  The undersigned addresses each potential form of this claim below.

### A. Gender-Based Disparate Treatment

To advance a *prima facie* case of gender discrimination, a plaintiff must show "(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably."  *Lewis*, 918 F.3d at 1220–21 (citation omitted).  To demonstrate the fourth element of the disparate treatment *prima facie* case, a plaintiff must ordinarily point to comparators who are "similarly situated in all material respects."  *Id.* at 1226.

Here, Scott cannot make out a *prima facie* case for at least two reasons.  First, she cannot show that she was subjected to an adverse employment action—in the federal-sector context, a

"personnel decision"[11]—when Holifield approached her in November 2021.  The record does not reflect that anything resembling a personnel decision resulted from this.  Second, even if it did result in some personnel decision, there is no evidence in the summary judgment record that Holifield approaching Scott implicates her right to be "free from" differential treatment based on her gender, *see Babb II*, 992 F.3d at 1199.  This standard is implicated when gender "plays a part in the way a decision is made."  *Babb I*, 589 U.S. at 406.  But there is no evidence anything gender-related motivated or informed Holifield's actions,[12] and Scott has identified no comparators outside her protected class who were in some way treated differently.

Separate from Scott's *prima facie* case, the absence of any evidence that would support a gender-discrimination claim based on this conduct also means that there is no "convincing mosaic" of circumstantial evidence permitting this claim to survive summary judgment.  *See Ismael,* 161 F. 4th at 764.  In fact, Scott has not pointed to *any* evidence at all that would support a gender-based disparate treatment claim.[13] (*See* doc. 47 at 10–12).  Rather, Scott states in a conclusory manner that she "has presented undisputed facts, supported by competent evidence, demonstrating that there is a genuine issue of material fact in this lawsuit."  (*Id.* at 12).  But Scott does not actually

---

[11] *See Babb I*, 589 U.S. at 405 ("personnel action" includes "most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews").

[12] Scott testified that Holifield "would say stuff like 'These females just don't like to come to work.  They lazy.  They don't want to be here.  They don't want to do this job.  They don't want to do the wheelchairs.  They don't want to lift.  They don't want to' . . . . He would say things like that.  And it would always be 'These females.'" (Scott Depo. at 44-1 at 23 (85:3–11)).  While this might support that Holifield had a general bias against female employees, there is nothing that would connect that general bias to the November Incident.

[13] Scott arguably claims that her constructive discharge was the personnel action that followed the November Incident.  For the reasons discussed above, *see supra*, n.10, Scott has not asserted a constructive discharge claim.  Even if she had, she has still pointed to no evidence to support that the constructive discharge had anything to do with her gender.

identify any of these "undisputed facts" or any specific "competent evidence." Accordingly, summary judgment is due to the VA on this claim.

### B. Gender-Based Hostile Work Environment

An employee seeking to establish a *prima facie* hostile work environment case must demonstrate that: "(1) [s]he belongs to a protected group; (2) [s]he suffered unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as [sex]; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of either direct liability or vicarious liability." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020) (citing *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002)).

As an initial matter, the November Incident is the *only* conduct Scott specifically identifies as the basis of her hostile work environment claim. (*See* doc. 47 at 9). That said, the VA's reply gives Scott the benefit of the doubt that she has also grouped the October Incident in with her hostile work environment claim. (*See* doc. 48 at 8–10). The undersigned will also consider both incidents below as part of the hostile work environment claim.[14]

Scott can establish that she is a member of a protected group (female) and that she suffered unwelcome harassment. Additionally, the OIG Report put the VA on notice that Scott considered at least some of Holifield's conduct to be part of a hostile work environment, arguably also

---

[14] Even if considered, none of the other incidents contained in Scott's EEOC charge would change the analysis below.

supporting a basis for the VA's liability.  However, Scott cannot show the third and fourth elements of a *prima facie* case.

As to the third element, Scott cannot show that any harassment she experienced was based on her gender.  To be "based on" gender, gender must have been a motivating factor in the conduct at issue.  *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 836 (11th Cir. 2021).  Thus, to be actionable, the conduct must contain "sexual or other gender-related connotations."  *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999).  Neither the October Incident nor the November Incident have any obvious gender-related connotations.  In the October Incident, Holifield and Scott disputed timekeeping responsibilities.  None of the four ROCs—including Scott's—support that Holifield used any language regarding Scott's gender.  Scott stated that she was "in shock at [Holifield's] behavior and tone" and "became fearful and felt trapped," but this does not support that Holifield was motivated by Scott's gender.  Nor is there any evidence to support that the November Incident, in which Scott and Holifield interacted only nonverbally and at a distance, was connected to Scott's gender.  As the VA notes (doc. 48 at 4–5), Scott cannot support a gender discrimination solely on the fact that Holifield is male and Scott is female.  *See Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (explaining that "the statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment."); *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th Cir. 2010) ("Even gender-specific terms cannot give rise to a cognizable Title VII claim if used in a context that plainly has no reference to gender.").  And while it appears undisputed that Scott and Holifield did not like each other, "[p]ersonal animosity is not the

16

equivalent of sex discrimination . . . [a] plaintiff cannot turn a personal feud into a sex discrimination case by accusation." *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986).

As to the fourth element, Scott cannot show that the harassment she experienced was severe or pervasive. To show the severity of the harassment, a plaintiff must point to evidence showing that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). This contains both a subjective and an objective element. *Fernandez*, 961 F.3d at 1153. The employee must first establish that she "subjectively perceive[d] the environment to be abusive." *Harris*, 510 U.S. at 21. As to the objective element, she must show that the environment is one "that a reasonable person would find hostile or abusive." *Id.* A court assessing the objective element must consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246. These factors guide the inquiry, but the evidence must be viewed "cumulatively and in the totality of the circumstances." *Fernandez*, 961 F.3d at 1153 (quoting *Reeves*, 594 F.3d at 808).

There appears to be no dispute that Scott subjectively believed that the environment was abusive. However, the conduct here fails the objective element. As to the frequency of the conduct, the record reflects two incidents in a two-month period.[15] This falls short of the frequency

---

[15] While Scott testified to disability-based harassment dating back to 2014, any claims based on disability discrimination have been dismissed. (*See* doc. 37).

required for harassment to rise to the level of a pervasively hostile work environment. While there is "not simply some magic number of . . . insults" that precludes summary judgment, *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002), the undersigned finds that this was not frequent. As to the severity of the conduct, the undersigned finds it was not severe within the meaning of Title VII; rather, the incidents were "trivial slights," *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020). As to the third *Mendoza* factor, Scott's ROC and deposition testimony support that Holifield physically standing over her and shaking his finger at her during the October Incident and aggressively approaching the van in which Scott was sitting during the November Incident were at least somewhat physically threatening. That said, Holifield never actually made physical contact with Scott during either incident, and Holifield backed off, still at a distance, when Scott gestured at him during the November Incident. Finally, there is no evidence to support that either incident of harassment interfered with Scott's job performance. Rather, Scott testified that she received "outstanding" performance reviews and could recall no discipline while working at the VA. (Scott Depo. at 6 (18:10–20)). Viewed holistically and in the totality of the circumstances, even the potential physical component of the October and November Incidents does not outweigh the infrequency, lack of severity, and lack of interference with Scott's job performance.

The undersigned has considered above all of the evidence related to Scott's hostile work environment claim in the context of her *prima facie* case. That said, regardless of whether Scott can make out a *prima facie* hostile work environment case, the record does not contain a "convincing mosaic" of evidence that would otherwise allow Scott's claim past summary judgment for substantially the same reasons cited above: Scott has provided no evidence that gender was a motivating factor in Holifield's conduct and the conduct she alleges was neither

severe nor pervasive enough that a reasonable jury could conclude it constituted a hostile work environment.  Accordingly, the VA is due summary judgment on this claim.

## IV. Conclusion

For the reasons stated above, the VA is entitled to summary judgment on all of Scott's claims against it, and this case is **DISMISSED WITH PREJUDICE**.  A separate order will be entered.

DONE this 19th day of March, 2026.

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE